UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSEPH BROWN,

                          Plaintiff,

        v.                                          9:04-CV-0785
                                                    (TJM/GHL)
GLENN S. GOORD; DALE ARTUS; R. LYNCH,

                          Defendants.

APPEARANCES:                                        OF COUNSEL:

JOSEPH BROWN, 82-A-6100
   Plaintiff, *Pro Se*
Elmira Correctional Facility
P.O.  Box 500
Elmira, NY 14902

HON. ELIOT L. SPITZER                               ROGER W. KINSEY, ESQ.
Attorney General for the State of New York          Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge[1]

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  This is a *pro se* civil rights action brought pursuant to 42 U.S.C. §

1983  by Inmate Joseph Brown ("Plaintiff") against New York State Department of Correctional

---

[1]        I would like to thank my intern, Francesco P. Trapani, currently a second-year law student at Syracuse University College of Law, who assisted in the researching and writing of this Report-Recommendation.

Services ("DOCS") Commissioner Glenn S. Goord, Clinton Correctional Facility ("Clinton C.F.") Superintendent Dale Artus, and Clinton C.F. Sergeant Roy Lynch ("Defendants"). Generally, in his Complaint, Plaintiff alleges that Defendants violated his rights under the First, Eighth and Fourteenth Amendments due to their involvement in (1) the allegedly improper searching of his mail on or about October 8, 2003, (2) the allegedly improper searching of his prison cell on or about October 8, 2003, (3) the allegedly improper testing of his urine for drug usage on or about October 9, 2003, and January 25, 2004, and (4) the allegedly improper conducting of three disciplinary hearings concerning Plaintiff, which occurred in October of 2003 and February of 2004.  (Dkt. No. 1 & Attachments [Plf.'s Compl.].)

Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 26.) Generally, Defendants' motion raises the following issues: (1) whether Plaintiff has failed to adduce any evidence indicating that Defendants were personally involved in the constitutional violations that Plaintiff alleges; (2) whether, in the alternative, Plaintiff has failed to state a due process claim under the Fourteenth Amendment concerning the conducting of his three disciplinary hearings; (3) whether, in the alternative, Defendants are protected from liability by the doctrine of qualified immunity; and (4) whether, in the alternative, the Eleventh Amendment bars recovery from Defendants in their official capacity.  (Dkt. No. 26, Part 43 [Defs.' Mem. of Law].)  For the reasons discussed below, I answer the first two questions in the affirmative (and I therefore do not answer the second two questions).  As a result, I recommend that Defendants' motion for summary judgment be granted.

## I.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[3]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[4] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[5] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

Imposed over this general burden-shifting framework is the generous perspective with

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[3]        *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[4]        *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[5]        *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[6]        *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted; emphasis added].

which the Court generally views a *pro se* civil rights plaintiff's papers.[7]  For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[8]

Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[9]  Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude."[10]  I note that, in such cases, the overly

---

[7]      *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[8]      *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[9]      *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91-CV-5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[10]      *See, e.g.*, *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 & n.2 (N.D.N.Y. June 22, 2006) (McAvoy, J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n.10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in Northern District of New York alone); s*ee also Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion)

litigious inmate is not being denied this special solicitude or status as a form of punishment for his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of need for special solicitude).[11]

Here, after carefully considering the matter, I conclude that Plaintiff's litigation experience warrants denying him the special solicitude or status normally afforded *pro se* civil rights litigants.  In addition to the current action, it appears that Plaintiff has filed at least nine other such actions in district courts within the Second Circuit alone:

---

(plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, 97-CV-0938, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431 (2d Cir. 1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (plaintiff at one time had at least 30 simultaneously pending lawsuits); *Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001) (plaintiff at one point had 30 simultaneously pending suits); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan*, 93-CV-0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n.3, 1996 WL 328209 (W.D.N.Y. 1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n.1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

[11]     *See*, *supra*, note 10 of this Report-Recommendation (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

1. *Brown v. C.E.R.T. for D.O.C.S.*, 82-CV-1028 (E.D.N.Y.) (prisoner civil rights action).

2. *Brown v. Queens County D.A.*, 82-CV-2318 (E.D.N.Y.) (prisoner civil rights action).

3. *Brown v. Warden Sirnotty*, 82-CV-2649 (E.D.N.Y) (prisoner civil rights action).

4. *Brown v. Hoke*, 87-CV-2066 (E.D.N.Y.) (habeas corpus petition).

5. *Brown v. Hoke*, 88-CV-0620 (E.D.N.Y.) (habeas corpus petition).

6. *Brown v. New York*, 90-CV-7766 (S.D.N.Y.) (prisoner civil right action).

7. *Brown v. Herbert*, 94-CV-1221 (N.D.N.Y.) (habeas corpus petition).

8. *Brown v. Kelly*, 95-CV-1011 (S.D.N.Y.) (prisoner civil rights action).

9. *Brown v. Fitzpatric*, 99-CV-4502 (S.D.N.Y.) (prisoner civil rights action).

Moreover, it appears that Plaintiff has filed at least six federal court appeals in actions dealing with his imprisonment:

1. *Brown v. Hoke*, No. 87-7197 (S. Ct.).

2. *Brown v. Hoke*, No. 88-6688 (S. Ct.).

3. *In re Joseph C. Brown*, No. 89-6175 (S. Ct.).

4. *Brown v. State of N.Y. D.O.C.S.*, No. 91-2189 (2d Cir.).

5. *Brown v. Queens County D.A.*, No. 96-2783 (2d Cir.).

6. *Brown v. Fitzpatric*, No. 99-0225 (2d Cir.).

Finally, an important point bears mentioning with regard to the *in forma pauperis* ("IFP") status that Plaintiff has enjoyed during this action.  On July 6, 2004, Plaintiff applied for permission to proceed IFP.  (Dkt. No. 2.)  On July 15, 2004, I granted that application.  (Dkt. No. 7.)  In so doing, I relied on Plaintiff's sworn assertion in his Complaint that he had previously

filed only one other federal court action dealing with his imprisonment.[12]  In fact, Plaintiff had

filed numerous other such actions, as indicated above.  Had I known of these numerous prior

federal court actions concerning Plaintiff's imprisonment, I would have briefly examined them

and learned that Plaintiff had already earned three "strikes" for purposes of 28 U.S.C. §

1915(g).[13]  As a result, I would have concluded that Plaintiff was no longer eligible to proceed

IFP,[14] and I would have denied his application.  While I decline at this late stage of the

proceeding to withdraw my prior Order and to stay the case pending receipt of the Court's filing

fee from Plaintiff, or to cite Plaintiff's lack of candor and good faith as an additional reason in

favor of dismissing Plaintiff's Complaint, I do believe that the Court's final decision on

Defendants' motion should reflect Plaintiff's prior litigation history, and his accumulation of

"three strikes" for purposes of 28 U.S.C. § 1915(g).

---

[12]      (Dkt. No. 1, ¶ 4.B. [Plf.'s Verified Compl., describing only one other federal court action that he had previously filed dealing with his imprisonment].)

[13]      *See Brown v. Kelly*, 95-CV-1011, Order of Dismissal (S.D.N.Y. Feb. 21, 1996) (*sua sponte* dismissing Plaintiff's civil rights action for failure to state a claim and certifying, pursuant to 29 U.S.C. § 1915, that any appeal from the Order would not be taken in good faith); *Brown v. Fitzpatric*, 99-CV-4502, Order of Dismissal (S.D.N.Y. June 23, 1999) (*sua sponte* dismissing Plaintiff's civil rights action for failure to state a claim and certifying, pursuant to 29 U.S.C. § 1915, that any appeal from the Order would not be taken in good faith); *Brown v. Fitzpatric*, No. 99-0225 (2d Cir. Apr. 27, 2000) (dismissing appeal as frivolous within meaning of 29 U.S.C. § 1915).

[14]      *See* 18 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

## III.    STATEMENT OF MATERIAL FACTS

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[15] and are not specifically controverted by the non-movant.[16]  A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[17]  In the event the district court chooses to conduct such an independent review of the record, it may search a verified complaint (which has the effect of an affidavit) for proof of a factual dispute.[18]

---

[15]    *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[16]    *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[17]    *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[18]    *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[19]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[20]  In addition, such an affidavit (or verified complaint) must not be conclusory.[21]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

---

"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

[19]      Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[20]      *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[21]      *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

lack any supporting evidence or are too general.[22]  Moreover, "[a]n affidavit must not present

legal arguments."[23]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge

and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely

unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and

improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to

credit the allegations made in the complaint."[24]

------

[22]     See, e.g., Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; West-Fair Elec. Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), cert. denied, 474 U.S. 829 (1985); Applegate, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[23]     N.D.N.Y. L.R. 7.1(a)(2).

[24]     See, e.g., Jeffreys v. City of New York, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; Argus, Inc. v. Eastman Kodak Co., 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); Allah v. Greiner, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact

While I apply these legal principles below in the Analysis section of this Report-Recommendation (to the extent necessary), I pause to make four general observations.  First, all of the factual assertions set forth in Defendants' Rule 7.1 Statement are supported by the record (although I note that one of those paragraphs does not contain a factual assertion but a legal conclusion, which is not appropriate for a Rule 7.1 Statement).[25]  Second, the majority (i.e., 33 out of 50) of those factual assertions are admitted by Plaintiff.[26]  Third, with regard to the few (i.e., 17 out of 50) factual assertions that Plaintiff denies (or denies knowledge regarding), generally Plaintiff's Rule 7.1 Response violates Local Rule 7.1(a)(3) by not setting forth a specific citation to the record where the (alleged) factual issue arises.[27]  The only two record

_____

with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

[25]      The aforementioned legal conclusion is contained in Paragraph 48 of Defendants' Rule 7.1 Statement.  (Dkt. No. 26, Part 2, ¶ 48.)  The only factual assertion in Defendants' Rule 7.1 Statement that does not contain a record citation is Paragraph 34.  (Dkt. No. 26, Part 2, ¶ 34 [Defs.' Rule 7.1 Statement].)  This omission appears to have been a simple oversight, since the document cited in the paragraphs preceding and following Paragraph 34 (i.e., the Artus Affidavit) contains evidentiary support for the fact asserted in Paragraph 34.  (*See* Dkt. No. 26, Part 3, ¶ 33 [Artus Affid.].)

[26]      (Dkt. No. 29, ¶¶ 1, 3, 3.a., 5-8, 9.a., 10.a., 13, 15, 17-19, 21, 23, 25 [Plf.'s Rule 7.1 Response, admitting to the facts asserted in Paragraphs 1, 3, 5-8, 13-16, 18, 19, 21-30, 32, 36-44, and 46 of Defendants' Rule 7.1 Statement].)

[27]      (Dkt. No. 29, ¶¶ 2, 4, 9, 10, 11, 12, 14, 16, 20, 22, 24, 26, 27 [Plf.'s Rule 7.1 Response, denying or denying knowledge of the facts asserted in Paragraphs 2, 4, 9-12, 17, 20, 31, 33-35, and 45, 47-50 of Defendants' Rule 7.1 Statement], ¶¶ 4.a., 9.a., 10.a. [admitting portions of the aforementioned "disputed" paragraphs].)

citations provided by Plaintiff in support of a denial either do not support the fact asserted by him

or are offered in support of a legal argument, not a factual assertion appropriate for a Rule 7.1

Response.[28]  With respect to the remainder of Plaintiff's unsupported denials, I decline to

perform an independent review of the record to find proof of a factual dispute--although I take

notice of any such proof of a factual dispute that I come across during my review of the record.

Toward that end, I note that Plaintiff's Complaint is verified.

## IV.  ANALYSIS

### A.  Whether Plaintiff Has Failed to Adduce Any Evidence Indicating that Defendants Were Personally Involved in the Constitutional Violations Alleged

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a

finding of liability in a Section 1983 action.[29]  The standards for assessing the liability of

supervisors (such as Defendants Goord and Artus) were stated by the Second Circuit in

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2004):

> The liability of a supervisor under § 1983 can be shown in one or more
> of the following ways: (1) actual direct participation in the
> constitutional violation, (2) failure to remedy a wrong after being
> informed of it through a report or appeal, (3) creation of a policy or
> custom that sanctioned conduct amounting to a constitutional
> violation, or allowing such a policy or custom to continue, (4) grossly
> negligent supervision of subordinates who committed a violation, or
> (5) failure to act on information indicating that unconstitutional acts
> were occurring.

---

[28]     (Dkt. No. 29,  ¶¶ 4.a., 26.a. [citing to Paragraph 1 of Plaintiff's Compl. to support Plaintiff's factual assertion that the letter from Plaintiff's wife to Plaintiff did not contain, in part, a fifteen dollar money order to Inmate Valez; and citing Paragraphs 9-14 of Defendant Goord's affidavit to support Plaintiff's legal argument that Defendant Goord was "personally involved" in the constitutional violations alleged in this action].)

[29]     *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

1.      **Defendant Goord**

Although Plaintiff cites the above-stated legal standard in his memorandum of law, he does not *expressly* identify which of the five ways that Defendant Goord was allegedly involved in the alleged constitutional violations.[30]   However, Plaintiff's Complaint, memorandum of law, and Rule 7.1 Response assert that Defendant Goord was involved in the alleged constitutional violations in October of 2003 through the third, fourth and/or fifth means of personal involvement stated above.[31]   (I note that Plaintiff does not allege or argue that Defendant Goord was personally involved in any of the other constitutional violations alleged in this action, i.e., any of the violations occurring in January and February of 2004.)

More specifically, Plaintiff's papers can be read as setting forth the following three arguments in support of Defendant Goord's personal involvement: (1) as the Commissioner of DOCS, Defendant Goord was responsible for "creat[ing]" and "enforcing" the "procedures being implemented against plaintiff at Clinton [C.F.]" in October of 2003; (2) as the Commissioner of DOCS, Defendant Goord was responsible for managing his "administrative staff" in October of 2003 who included, among others, Defendants Artus and Lynch; and (3) Defendant Goord failed to take appropriate action after being placed on "actual or constructive notice of the unconstitutional procedures that were being implemented at Clinton [C.F.]" in October of 2003 through the three letters that Plaintiff sent to Defendant Goord between October of 2003 and

---

[30]      (Dkt. No. 29, Plf.' Mem. of Law, at 5-9.)

[31]      (Dkt. No. 1, Attachments [Plf.'s Compl.]; Dkt. No. 29, Plf.' Mem. of Law, at 5-9; Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 26.a..)

13

March of 2004.[32]

Based on the record before me, I find that each of these three arguments is wholly without evidentiary support.

> **a.      Creation of a Policy or Custom that Sanctioned Conduct Amounting to a Constitutional Violation, or Allowing Such a Policy or Custom to Continue**

There is no evidence that Defendant Goord created, or allowed to continue, a policy or custom that sanctioned any constitutional violation (assuming there was such a violation). Plaintiff does not even bother to specify the "policy, practice or custom[]" to which he is conclusorily referring.[33]

If Plaintiff is referring to some sort of policy or custom at Clinton C.F. that (allegedly) sanctioned or caused the improper searching of his mail and/or prison cell, and/or the improper testing of his urine in October of 2003, then Plaintiff has failed to (1) identify that particular policy or custom, (2) explain how it sanctioned or caused the alleged constitutional violations in October of 2003, and (3) provide any evidence indicating that Defendant Goord either created that policy or custom, or knew of it and permitted it to continue.  Indeed, Plaintiff's own allegations acknowledge that the wrongdoers in question were acting in *violation* of DOCS policies.[34]  In any event, there is no evidence in the record that Defendant Goord ever read any of

---

[32]      (Dkt. No. 29, Plf.' Mem. of Law, at 6, 10; *see also* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 26.a.; Dkt. No. 1, Attachments [Plf.'s Compl., attaching letter dated 3/22/04 from Plaintiff to Defendant Artus with copy to Defendant Goord; and attaching letter dated 3/24/04 from Plaintiff to Defendant Goord].)

[33]      (Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 26.a.)

[34]      For example, Plaintiff alleges that "the person in correspondence [who had searched Plaintiff's mail] had no authority to read or confiscate Plaintiff's incoming mail without

the three letters sent to him by Plaintiff concerning the events of October of 2003, sufficient to give him *knowledge* that any policy or custom violated the constitution.[35]

If, instead, Plaintiff is referring to Defendant Goord's policy of delegating to high-ranking subordinates the responsibility to read and respond to, complaints by prisoners, then Plaintiff is mistaken that such a policy renders Defendant Goord personally involved in the constitutional violations of which the prisoners complain.[36]  Moreover, the record is clear that, following the receipt of these letters by Defendant Goord's office, Defendant Goord's office took action (as described below in Part IV.A.1.c. of this Report-Recommendation).  Plaintiff has failed to

---

following Directive that govern such [sic]."  (Dkt. No. 1, "Statement of Claim," ¶ 1 [Plf.'s Compl.].)  In addition, Plaintiff argues that staff members at Clinton C.F. "were not following the proper policy and procedure for incoming mail according to N.Y. Directive 4422; and were not following the proper policy and procedure for cell searches according to N.Y. Directive 4910." (Dkt. No. 29, Plf.'s Mem. of Law, at 10.)  Moreover, in Plaintiff's letter to the Clinton C.F. Grievance Clerk, dated October 9, 2003 (which is attached to his Complaint and incorporated in it by reference), Plaintiff alleges, "Had Inmate Correspondence complied with the rules and regulations governing their job function, and ahdere[d] to Chapter VIII, Directives 4422 and 4421, I would not be faced with said harassment."  (Dkt. No. 1, Attachments [Plf.'s Compl.].)

[35]     (*Compare* Dkt. No. 26, Part 2, ¶ 47 [Defs.' Rule 7.1 Statement, asserting this fact, and citing the affidavit of Defendant Goord, which, at Paragraphs 12 and 13, supports this fact] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 23 [denying "sufficient knowledge to admit or deny" this fact, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, and thus effectively admitting this fact].)

[36]     *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS Commissioner was not personally involved in alleged constitutional violation where he forwarded plaintiff's letter of complaint to a staff member for decision, and he responded to plaintiff's letter inquiring as to status of matter); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in turn, responded, without more, does not establish personal involvement."); *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action.").

adduce any evidence that this action was in some way inadequate, or that (even if it was somehow inadequate) Defendant Goord had any reason to know of any such inadequacy.  Again, there is no evidence in the record that Defendant Goord ever read any of the three letters sent to him by Plaintiff concerning the events of October of 2003.

**b.      Gross Negligence in Supervision of Subordinates who Committed a Violation**

Similarly without merit is Plaintiff's argument that Defendant Goord was "grossly negligent" in managing any subordinates who caused any constitutional violations in October of 2003.  Even assuming such a violation occurred, there is no evidence of gross negligence (or even ordinary negligence) by Defendant Goord for the reasons stated above and below (in Parts IV.A.1.a. and IV.A.1.c. of this Report-Recommendation).  Plaintiff does not even bother to allege or argue that such violations had occurred previously and that Defendant Goord was on actual or constructive notice of any such prior violations.[37]  The rule of absolute liability that Plaintiff espouses would hold Defendant Goord liable for any constitutional violations by a correctional employee at a correctional facility since he is the ultimate "supervisor" of such employees.  That is simply not the law.

**c.      Failure to Act on Information Indicating that Unconstitutional Acts Were Occurring**

This is perhaps Plaintiff's strongest argument in favor of Defendant Goord's personal involvement in the alleged constitutional violations in October of 2003.  However, as with Plaintiff's prior two arguments in favor of personal involvement, this argument is wholly devoid

---

[37]      (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 29, Plf.'s Mem. of Law, at 7, 10.)

of evidentiary support.

For purposes of Defendants' motion, it is uncontroverted that on or about October 10, 2003, March 22, 2004, and March 24, 2004, Plaintiff sent three letters (or copies of letters) to Defendant Goord requesting an investigation into the alleged mishandling of prisoner mail, the alleged improper searching of prison cells, and the alleged improper conducting of urinalysis tests of prisoners at Clinton C.F.[38]

Specifically, Plaintiff's letter of October 10, 2003, which was addressed to the DOCS Inspector General and copied to Defendant Goord, stated as follows:

> Please note that I am writing your office requesting that an investigation be conducted against the correspondence office, and a Sergeant R. Lynch here at Clinton Correctional Facility.  Enclosed you will find a copy of a recently submitted recently subjected [sic] to continuous harassment by a Sergeant R. Lynch.  I have had my cell searched, [a] urinalysis, a block placed on my spouse's phone, and [I have been] served with 2 fictitious misbehavior report [sic].  Both were written by Sgt. Lynch (tier II & tier III), and the tier II was for alleged contraband found in my cell (110-21 unauthorized papers) to which Sgt. Lynch, did not witness [sic] nor did he participate in said cell search.
> For all the above reasons I am requesting that this matter be investigated, and that the illegal tampering with my mail, and [sic] continuous harassment by Sgt. Lynch stop.  I am also requesting that my mail and money order, which are being held in the Contraband Locker, be forwarded to me as they were confiscated illegally and depicted no wrong doing [sic] on my part.[39]

Moreover, Plaintiff's letter of March 22, 2004, which was addressed to Defendant Artus and copied to Defendant Goord, stated as follows:

---

[38]      (*Compare* Dkt. No. 26, Part 2, ¶¶ 38, 42, 43 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 23 [admitting these facts].)

[39]      (Dkt. No. 26, Part 23 [attaching Plaintiff's letter dated 10/10/03].)

17

> In the month of October, 2003, I filed a Complaint with Commissioner Glenn S. Goord, regarding the harassment/misconduct directed against me by Sergeant Lynch, and the Head Clerk of Inmate Correspondence there at Clinton Correctional Facility.  The Complaint was a correspondence issue and I was forwarded a Memo by your office, which stated that an investigation would be conducted; however, I have not heard or received anything regarding said investigation.
>
> Sir, at this time I would like to have any and all papers regarding said investigation, including your findings with regards to my complaint.
>
> I thank you for your time and consideration.[40]

Finally, Plaintiff's letter of March 24, 2004, to Defendant Goord, stated as follows:

> In the month of October, 2003, I filed a complaint with your office against a Sergeant R. Lynch, and the Head Clerk of Inmate Correspondence there at Clinton Correctional Facility Annex.  I was informed by your office that an investigation would take place; however, I have yet to hear anything at all.  The Head Clerk, and Sergeant R. Lynch, without proper authorization [sic] or complying with Directive [sic], read and confiscated my incoming mail and served me with a Tier II Misbehavior Report.  It is for this reason that I file my complaint with your office.
>
> At this time I would like to be made aware of the status or findings of said investigation.[41]

As an initial matter, I find it extremely questionable that these three letters were sufficient to provide Defendant Goord with even "constructive notice" of the alleged constitutional violations in October of 2003.  The second two letters were sent to Defendant Goord in late-March of 2004, several months *after* the completion of the alleged constitutional violations in October of 2003.  As a result, I fail to see how the two letters could possibly indicate "that

---

[40]     (Dkt. No. 1, Attachments [Plf.'s Compl., attaching letter dated 3/22/04 from Plaintiff to Defendant Artus with copy to Defendant Goord]; Dkt. No. 26, Part 23 [attaching Plaintiff's letter dated 3/22/04].)

[41]     (Dkt. No. 1, Attachments [Plf.'s Compl., attaching letter dated 3/24/04 from Plaintiff to Defendant Goord]; Dkt. No. 26, Part 22 [attaching Plaintiff's letter dated 3/24/04].)

18

unconstitutional acts *were occurring*" at the time of their receipt, as required for the fifth type of personal involvement. *Hernandez*, 341 F.3d at 145 [emphasis added].

Moreover, the first letter was devoid of factual detail about (1) who in the "correspondence office" at Clinton C.F. "tamper[ed]" with Plaintiff's mail, when did they do so, and exactly how or why the alleged mishandling of Plaintiff's mail was unconstitutional, (2) who searched Plaintiff's prison cell, when did they do so, and exactly how or why was that search unconstitutional, (3) who conducted a urinalysis test of Plaintiff, when did they do so, and exactly how or why was that test unconstitutional, and (4) how Defendant Lynch could have been responsible for the improper cell search if, as Plaintiff alleges, he "did not participate in said cell search."[42]

In any event, even if Plaintiff's three letters were sufficient to put Defendant Goord on constructive notice of the alleged constitutional violations, it is uncontroverted that, following the receipt of Plaintiff's letters, Defendant Goord's office took action. Specifically, following the receipt of Plaintiff's October 10, 2003, letter to Defendant Goord, Defendant Goord's office forwarded the letter to DOCS Inspector General's Office Director of Operations Kenneth McLaughlin for a response;[43] Mr. McLaughlin responded to Plaintiff by memorandum dated

---

[42]     *See Wright v. Coughlin*, 21 F.3d 496, 501 (2d Cir. 1994) (there was no personal involvement on the part of DOCS Commissioner even though he received a letter from plaintiff describing the conditions of his confinement, because the letter failed to state that plaintiff "was being retained in the SHU without a hearing, or that he had been deprived or any rights connected with a hearing").

[43]     (*Compare* Dkt. No. 26, Part 2, ¶ 39 [Defs.' Rule 7.1 Statement, asserting this fact, and citing evidence in support of it] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 23 [admitting this fact].)

November 19, 2003, which stated that he had referred the matter to (in part) Defendant Artus;[44] following an investigation of Plaintiff's complaint (and the discovery that Plaintiff's previously seized mail and money had been returned, and that Plaintiff had filed a formal grievance regarding the matter on October 9, 2003, which was ultimately found to be without merit), Captain Brown concluded that Plaintiff's complaint was without merit.[45] Similarly, following the receipt of Plaintiff's letters of March 22, 2004, and March 24, 2004, to Defendant Goord, Defendant Goord's office forwarded Plaintiff's March 24, 2004, letter to Deputy Commissioner Lucien J. Leclaire, Jr.;[46] Deputy Commissioner Leclaire investigated the matter and responded to

---

[44]    (*Compare* Dkt. No. 26, Part 2, ¶ 40 [Defs.' Rule 7.1 Statement, asserting this fact, and citing evidence in support of it] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 23 [admitting this fact].)

[45]    (*Compare* Dkt. No. 26, Part 2, ¶¶ 8, 17-19, 41, 44 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 8, 14, 15, 23 [admitting the asserted facts, and then denying "sufficient knowledge to admit or deny" one of the facts, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court]; *see also* Dkt. No. 26, Part 3, ¶ 20 [Artus Affid., stating, "After review of the pertinent rules and regulations Captain S. Brown found that the proper procedure governing inmate correspondence had been followed."]; Dkt. No. 26, Part 26, ¶ 19 [Lynch Affid., stating, "After a review of the pertinent rules and regulations Captain S. Brown found that the proper procedure governing inmate correspondence had been followed."]; Dkt. No. 26, Part 38 [attaching Interdepartmental Communication dated 10/9/03 from Defendant Lynch to Captain S. Brown regarding the "Brown/Velez investigation"].)  In addition, I note that Plaintiff appears to have agreed on October 17, 2003, to withdraw his formally filed grievance and simply grieve the matters at issue through the disciplinary process, which also resulted in a finding that Plaintiff's complaints were without merit.  (*See, e.g.*, Dkt. No. 26, Part 37 [attaching Plaintiff's grievance dated 10/9/03, bearing handwritten note signed by Plaintiff, which stated, "10/17/03 returned mail & money. [W]ill appeal via disciplinary.  Joseph C. Brown"].)

[46]    (*Compare* Dkt. No. 26, Part 2, ¶ 45 [Defs.' Rule 7.1 Statement, asserting this fact, and citing evidence in support of it] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 24 [denying "sufficient knowledge to admit or deny" this fact, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, and thus effectively admitting this fact].)

Plaintiff by letter dated May 4, 2004.

Simply stated, no record evidence exists upon which a reasonable fact-finder could conclude that Defendant Goord "fail[ed] to act," as required for the fifth type of personal involvement. *Hernandez*, 341 F.3d at 145. If Plaintiff is arguing that Defendant Goord's actions were inadequate somehow, then Plaintiff has failed to specify the inadequacy, or support it with even a modicum of evidence.

As a result, I recommend that the Court dismiss Plaintiff's Complaint against Defendant Goord due to Defendant Goord's lack of personal involvement in any of the alleged constitutional violations.

### 2.    Defendant Artus

Again, although Plaintiff cites the above-stated five-part legal standard in his memorandum of law, he does not *expressly* identify which of the five ways that Defendant Artus was allegedly involved in the alleged constitutional violations.[47] However, Plaintiff's Complaint, memorandum of law, and Rule 7.1 Response assert that Defendant Artus was involved in the alleged constitutional violations in October of 2003 through the third, fourth and/or fifth means of personal involvement stated above.[48]

More specifically, Plaintiff's papers can be read as setting forth the following three arguments in support of Defendant Artus's personal involvement: (1) as the Superintendent of Clinton C.F., Defendant Artus was responsible for "enforc[ing]" and "put[ting] into practical

---

[47]    (Dkt. No. 29, Plf.' Mem. of Law, at 9-11.)

[48]    (Dkt. No. 1, Attachments [Plf.'s Compl.]; Dkt. No. 29, Plf.' Mem. of Law, at 9-11; Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 2, 33-35.)

application" the "policy and custom" created by Defendant Goord, which sanctioned or caused the alleged constitutional violations; (2) as the Superintendent of Clinton C.F., Defendant Artus was responsible for managing the staff at Clinton C.F., which included, among others, Defendant Lynch; and (3) Defendant Artus failed to take appropriate action after being placed on "constructive or actual notice" of the alleged constitutional violations at Clinton C.F. through the two appeals and one letter that Plaintiff sent to Defendant Artus in February and March of 2004.[49]

Based on the record before me, I find that each of these three arguments is wholly without evidentiary support.

### a.   Allowing to Continue a Policy or Custom that Sanctioned Conduct Amounting to a Constitutional Violation

There is no evidence that Defendant Artus enforced or allowed to continue a policy or custom that sanctioned any constitutional violation (assuming there was such a violation). As with his allegations concerning Defendant Goord, Plaintiff does not even bother to specify the "policy and custom" to which he is conclusorily referring.[50]

Generally, the same problems that undermine Plaintiff's reliance on this theory of personal involvement to hold Defendant Goord liable undermine Plaintiff's reliance on this theory to hold Defendant Artus liable.[51] For example, Plaintiff's own allegations acknowledge

---

[49]    (Dkt. No. 29, Plf.' Mem. of Law, at 9-11; *see also* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 2, 33-35; Dkt. No. 1, Attachments [Plf.'s Compl., attaching letter dated 3/22/04 from Plaintiff to Defendant Artus].)

[50]    (Dkt. No. 29, Plf.' Mem. of Law, at 10.)

[51]    *See*, *supra*, Part IV.A.1.a. of this Report-Recommendation.

22

that the wrongdoers in question were acting in *violation* of DOCS policies.[52]  In any event,

because I have already found that there is no record evidence that Defendant Goord created a

policy or custom that sanctioned or caused any constitutional violation, I find that there was no

such policy or custom that Defendant Artus could have "enforced."[53]  Furthermore, because

Defendant Artus (like Defendant Goord) may delegate to high-ranking subordinates the

responsibility to read and respond to, complaints by prisoners, such a policy does not render

Defendant Artus personally involved in the constitutional violations of which the prisoners

complain.[54]

   I would only add that there is no evidence in the record that Defendant Artus ever read

any of the letters or appeals sent to him by Plaintiff concerning the events in question, sufficient

---

[52]  In addition to Plaintiff's numerous assertions acknowledging that the wrongdoers were violating DOCS policies regarding mail and cell searches (*see*, *supra*, note 34 of this Report-Recommendation), Plaintiff has acknowledged that the wrongdoers were violating DOCS policies regarding the collection of urine specimens and the conducting of Tier hearings.  (Dkt. No. 29, Plf.'s Mem. of Law, at 10 [arguing, "[S]taff members at Clinton [C.F.] were not following the proper policy and procedure for urine specimen collection according to N.Y. Directive 4937 coupled with the Tier hearings not being conducted properly . . . ."]; Dkt. No. 26, Part 9 [attaching Plaintiff's appeal to Superintendent's Office from disciplinary hearing determination of 2/5/04, in which Plaintiff argued that "Officer Goff was in violation of Directive # 4937, Procedure # IV sub. D (2).  Urine specimen were [sic] left unsecure for about an hour"].).

[53]  *Id*.

[54]  *See Reid v. Artus*, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (no basis for personal involvement where Superintendent Artus assigned another officer to investigate plaintiff's complaint); *Gonzalez v. Coughlin*, 92-CV-7263, 1996 WL 496994, at *3-4 (S.D.N.Y. Sept. 3, 1996) (dismissing plaintiff's claim against prison superintendent for lack of personal involvement where plaintiff sent letter to superintendent, who referred matter to his deputy; stating, "Superintendent Keane receives a large volume of complaints every day, [and] for him to respond [to] or investigate each complaint would be practically impossible").

to give him *knowledge* that any policy or custom violated the constitution.[55]

**b.      Gross Negligence in Supervision of Subordinates who Committed a Violation**

Because Plaintiff advances this theory of personal involvement in such a conclusory fashion, it is difficult to identify and discuss this theory.[56]   Regardless of the particular nature of this theory on which Plaintiff is attempting to rely, even assuming that one of Defendant Artus's subordinates at Clinton C.F. committed a constitutional violation against Plaintiff, there is no evidence of gross negligence (or even ordinary negligence) by Defendant Artus with regard to his supervision of that subordinate.

If Plaintiff is arguing that Defendant Artus's gross negligence in supervising his subordinates caused one or more of the constitutional violations that occurred in *October of 2003*, then that argument fails for rather obvious reasons.  Specifically, Plaintiff does not adduce

---

[55]      (Dkt. No. 26, Part 39 [attaching response to Plaintiff's letter addressed to Defendant Artus dated March 22, 2004 which was not signed by Defendant Artus, but rather by his subordinate Captain Brown]; Dkt. No. 26, Part 3, ¶ 3 [Artus Affid., stating that he "was not personally involved in the decisions made by the staff at Clinton Correctional Facility with regard to Mr. Brown, his mail, cell search or drug testing"], ¶¶ 31-33 [stating, with regard to Plaintiff's Tier III hearing appeal, that "it is the standard custom and practice . . . for the First Deputy Superintendent to review inmate Grievances that are not resolved.  During the relevant time period First Deputy Superintendent, William D. Brown, routinely reviewed inmate grievance appeals"], ¶¶ 33-37 [stating, with regard to Plaintiff's appeal of Deputy Superintendent Brown's decision to CORC, that "I do not make decisions of this kind but I reasonably rely upon my staff to investigate and respond to these types of inquiries"]; Dkt. No. 26, Part 42, at 42 [attaching Plf.'s deposition transcript, wherein Plaintiff testified that he did not know if Defendant Artus personally received any of Plaintiff's appeals].)

[56]      (Dkt. No. 29, Plf.'s Mem. of Law, at 10-11 [arguing, "Defendants are guilty of their combined gross negligence and deliberate indifference to the constitutional rights of the plaintiff at Clinton [C.F.], as indicated by their knowledge, their exhibits, affidavits and letters from plaintiff, [sic] that unconstitutional practices were taking place, and their failure to act on the basis of the information received"].)

any evidence (or even allege) that (1) one of Defendant Artus's subordinates exhibited some sort of inclination before October 8, 2003 to commit one of the alleged constitutional violations occurring in October of 2003, (2) Defendant Artus was on actual or constructive notice of any such inclination before October 8, 2003, or (3) Defendant Artus failed to take proper care in disciplining or training that subordinate before October 8, 2003.[57]

Similarly, if Plaintiff is arguing that Defendant Artus's gross negligence in supervising his subordinates caused one or more of the alleged constitutional violations that occurred in *January or February of 2004*, then that argument fails for two independent reasons.  First, Plaintiff has neither alleged nor supported any facts indicating that the staff member responsible for a particular constitutional violation (such as the improper testing of his urine) in October of 2003 was the same staff member (or was acting pursuant to some sort of conspiracy with the staff member) who committed a similar constitutional violation in January or February of 2004.[58] Second, Plaintiff has neither alleged nor supported any facts indicating how Defendant Artus

---

[57]    (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 29, Plf.' Mem. of Law, at 10.)

[58]    (*Compare* Dkt. No. 1, "Statement of Claim," ¶ 3 [Plf.'s Compl., alleging that Plaintiff was given a urine test at the request of Defendant Lynch] *with* Dkt. No. 1, "Statement of Claim," ¶ 7 [Plf.'s Compl., alleging that Plaintiff was given a second urine test at the request of Sergeant West] *and with* Dkt. No. 1, "Statement of Claim," ¶ 13 [Plf.'s Compl., alleging that the second urine test was improperly administered by two unidentified corrections "officers," not a corrections "sergeant" such as Defendant Lynch]; *compare* Dkt. No. 1, "Statement of Claim," ¶ 5 [Plf.'s Compl., alleging simply that, at his October 2003 disciplinary hearing, he was found guilty, and not alleging any particular procedural right he was denied or the identity of the hearing officer] *with* Dkt. No. 1, "Statement of Claim," ¶ 13 [Plf.'s Compl., alleging simply that, at his February 2004 disciplinary hearing, he was "denied the right to challenge the credibility of the confidential information, and not alleging the identity of the hearing officer]; *see also* Dkt. No. 26, Part 11 [attaching Grievance No. CLA-4014-04, alleging that the two corrections officers responsible for improperly administering Plaintiff's urinalysis test on 2/5/04 were Officers Goff and Cumber].)

25

*failed* to take appropriate care in supervising his subordinates between October of 2003 and

January or February of 2004.[59]  Indeed, all of the available record evidence indicates that,

following the receipt of Plaintiff's letters, Defendant Artus's office took appropriate action

during that time period.  (*See*, *infra*, Part IV.A.2.c. of this Report-Recommendation.)

As stated earlier, the type of absolute liability that Plaintiff wishes to impose on

Defendant Artus due to his position as a supervisor is simply inconsistent with the standard for

personal involvement in Section 1983 actions.

> **c.    Failure to Act on Information Indicating that Unconstitutional
>         Acts Were Occurring**

For purposes of Defendants' motion, it is clearly established that, in October or

November of 2003, Plaintiff's letter of complaint to the DOCS Inspector General's Office

regarding various of the events complained of in this action was referred to Defendant Artus's

office for review.  In addition, it is uncontroverted that, in February and March of 2004, Plaintiff

filed two appeals with, and sent one letter to, Defendant Goord, regarding various of the events

complained of in this action.  (I note that the two disciplinary convictions from which Plaintiff

appealed in October of 2003 were decided, not personally by Defendant Artus, but by his

designee, Clinton C.F. Captain S. Brown, as permitted by 7 N.Y.C.R.R. § 253.8.)[60]

Specifically, at some point between October 10, 2003, and November 19, 2003, the

DOCS Inspector General's Office referred to Defendant Artus's office for review a letter of

---

[59]    (*See generally* Dkt. No. 1 [Plf.'s Compl.]; Dkt. No. 29, Plf.' Mem. of Law, at 9-
11.)

[60]    (Dkt. No. 26, Part 36 [attaching Plaintiff's disciplinary history, showing that
Plaintiff's appeals from his two Tier II disciplinary convictions on 10/8/03 were affirmed by
Captain S. Brown on 10/22/03].)

complaint sent by Plaintiff to the Inspector General's Office dated October 10, 2003, regarding

the alleged events of October 8 and 9, 2003.[61]  Plaintiff's underlying letter of October 10, 2003,

stated as follows:

> Please note that I am writing your office requesting that an investigation be conducted against the correspondence office, and a Sergeant R. Lynch here at Clinton Correctional Facility.  Enclosed you will find a copy of a recently submitted recently subjected [sic] to continuous harassment by a Sergeant R. Lynch.  I have had my cell searched, urinalysis [sic], a block placed on my spouse's phone, and served with 2 fictitious misbehavior report [sic].  Both were written by Sgt. Lynch (tier II & tier III), and the tier II was for alleged contraband found in my cell (110-21 unauthorized papers) to which Sgt. Lynch, did not witness [sic] nor did he participate in said cell search.
> For all the above reasons I am requesting that this matter be investigated, and that the illegal tampering with my mail, and [sic] continuous harassment by Sgt. Lynch stop.  I am also requesting that my mail and money order, which are being held in the Contraband Locker, be forwarded to me as they were confiscated illegally and depicted no wrong doing [sic] on my part.[62]

Furthermore, on February 9, 2004, Plaintiff appealed to Defendant Artus's office from the

determination of guilt (on the charge of using drugs) at Plaintiff's disciplinary hearing on

February 5, 2004.[63]  The stated grounds for the appeal were, in pertinent part, as follows:

---

[61]      (Dkt. No. 26, Part 20 [attaching memorandum from DOCS Inspector General's Office Director of Operations Kenneth McLaughlin to Plaintiff dated 11/19/03, stating the referenced fact].)

[62]      (Dkt. No. 26, Part 23 [attaching Plaintiff's letter dated 10/10/03].)

[63]      (*Compare* Dkt. No. 26, Part 2, ¶ 26 [Defs.' Rule 7.1 Statement, asserting this fact, and citing evidence in support of it] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 18 [admitting this fact].)

1.) Officer Goff was in violation of Directive # 4937, Procedure # IV sub. D (2).  Urine specimen were [sic] left unsecure for about an hour.

2.) I was denied due process when the hearing officer denied me information / statement [sic] of the confidential sources; also, when I was denied the requested log of 1/26/04, by Officer Cumber.

3.) Officer Cumber could not have been certified or properly trained. Albeit when asked, he stated that he has been testing urine for the past 2 years, he could not give me a date that his certification began or ended.  In fact, he stated that there is no set time.  Nor could Officer Cumber answer any of my questions regarding the testing unit.

4.) Hearing Officer error when [sic] he failed to dismiss [the] misbehavior report against me, after noting that another inmate testing positive before me[] had the same exact negative, cutoff, and high calibration rate [sic] for test one and two.  We also had the same positive rate for Cannabinoids, which is impossible.

5.) [The] [d]isposition imposed given the evidence against me was harsh.  I have never used drugs and have not had a dirty urine in or about 20 years.[64]

Moreover, on February 20, 2004, Plaintiff appealed to Defendant Artus's office from the denial (by the Clinton C.F. Inmate Grievance Review Committee) of his grievance dated February 10, 2004 (Grievance No. CLA-4014-04), complaining that improper urinalysis test procedures were employed on February 5, 2004.[65]  Plaintiff's underlying grievance had complained that Clinton C.F. Corrections Officers Goff and D. Cumber had violated DOCS

---

[64]      (Dkt. No. 26, Part 9 [attaching appeal to Superintendent's Office from disciplinary hearing determination of 2/5/04].)

[65]      (*Compare* Dkt. No. 26, Part 2, ¶¶ 30-32 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 19-21 [admitting most of these facts, and denying "sufficient knowledge to admit or deny" some of the facts, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, and thus effectively admitting that fact].)

directives and procedures by collecting and testing Plaintiff's urine without properly labeling it with Plaintiff's identifying information; as a result, the grievance had requested the following relief: "That the issue of officer Cumber's certification be investigated and that I be given proof of his certification of 1/26/04.  Also, Goff and Cumber be ordered by their supervisors to comply with any and all Departmental Directives, Rules, Policies, and Procedures."[66]  In denying the grievance, the Clinton C.F. Inmate Grievance Review Committee had responded: "Per investigative report, urine specimen was collected according to directives and procedures required.  Officer Cumber was certified in use of equipment on Oct. 27, 2002."[67]

Finally, Plaintiff's letter of March 22, 2004, which was addressed to Defendant Artus, stated as follows:

> In the month of October, 2003, I filed a Complaint with Commissioner Glenn S. Goord, regarding the harassment/misconduct directed against me by Sergeant Lynch, and the Head Clerk of Inmate Correspondence there at Clinton Correctional Facility.  The Complaint was a correspondence issue and I was forwarded a Memo by your office, which stated that an investigation would be conducted; however, I have not heard or received anything regarding said investigation.
> Sir, at this time I would like to have any and all papers regarding said investigation, including your findings with regards to my complaint.
> I thank you for your time and consideration.[68]

---

[66]     (Dkt. No. 26, Part 11 [attaching Grievance No. CLA-4014-04, dated 2/10/04].)

[67]     (Dkt. No. 26, Part 12 [attaching I.G.R.C. Response to Grievance No. CLA-4014-04, dated 2/17/04].)

[68]     (Dkt. No. 1, Attachments [Plf.'s Compl., attaching letter dated 3/22/04 from Plaintiff to Defendant Artus with copy to Defendant Goord]; Dkt. No. 26, Part 23 [attaching Plaintiff's letter dated 3/22/04].)

The problem with Plaintiff's reliance on these appeals and letters to show Defendant Artus's personal involvement in the alleged constitutional violations is not that the appeals and letters do not put Defendant Artus on "constructive notice" of the alleged violations but that each of the appeals and letters was followed by action taken by Defendant Artus's office.

Specifically, following the receipt of Plaintiff's letter to the Inspector General's Office dated October 10, 2003, and Plaintiff's letter to Defendant Artus dated March 22, 2004, Defendant Artus's office forwarded the matter to Clinton C.F. Captain S. Brown for investigation and response.[69] Following an investigation of Plaintiff's complaint (and the discovery that Plaintiff's previously seized mail and money had been returned, and that Plaintiff had filed a formal grievance regarding the matter on October 9, 2003, which was ultimately found to be without merit), Captain Brown concluded that Plaintiff's complaint was without merit.[70] In a

---

[69]     (Dkt. No. 26, Part 24 [attaching letter from Clinton C.F. Captain S. Brown to Plaintiff dated 4/8/04, which was copied to Defendant Artus, responding to Plaintiff's letter to Defendant Artus dated 3/22/04, and discussing the actions Captain Brown had taken in response to Plaintiff's complaints in October or 2003]; *cf.* Dkt. No. 26, Part 3, ¶ 19 [Artus Affid., stating, "The grievance [filed by Plaintiff] was referred to Captain S. Brown, by the grievance committee for investigation"].)

[70]     (*Compare* Dkt. No. 26, Part 2, ¶¶ 8, 17-19, 41, 44 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 8, 14, 15, 23 [admitting the asserted facts, and then denying "sufficient knowledge to admit or deny" one of the facts, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court]; *see also* Dkt. No. 26, Part 3, ¶ 20 [Artus Affid., stating, "After review of the pertinent rules and regulations Captain S. Brown found that the proper procedure governing inmate correspondence had been followed."]; Dkt. No. 26, Part 26, ¶ 19 [Lynch Affid., stating, "After a review of the pertinent rules and regulations Captain S. Brown found that the proper procedure governing inmate correspondence had been followed."]; Dkt. No. 26, Part 38 [attaching Interdepartmental Communication dated 10/9/03 from Defendant Lynch to Captain S. Brown regarding the "Brown/Velez investigation"].)  In addition, I note that Plaintiff appears to have agreed on October 17, 2003, to withdraw his formally filed grievance and simply grieve the matters at issue through the disciplinary process, which also resulted in a finding that Plaintiff's

letter to Plaintiff dated April 8, 2004 (a copy of which was sent to Defendant Artus), Captain

Brown summarized the actions that he had taken in the fall of 2003 with respect to Plaintiff's

complaint:

> An investigation was conducted into your complaint regarding mail.
>
> As you are aware, you had your wife send you in 10 dollars and inmate Velez 10 dollars. You admitted that you had Velez sent money yet had several different stories regarding why.
>
> You received the letter and $10.00 was placed in your account and the $15.00 m/o was returned to your wife as it was considered to be an illegal exchange.
>
> I conferred with the IGRC and note you signed off a complaint [sic], and the money and letter was returned to you.
>
> Therefore, I find no wrongdoing on any staff member's part; they performed their duties in an exemplary manner.[71]

Similarly, following Plaintiff's February 9, 2004, appeal to Defendant Artus's office from

his disciplinary conviction of February 5, 2004, Defendant Artus's office reviewed and affirmed

that conviction on March 16, 2004; the conviction was later also reviewed and affirmed by the

Central Office Review Committee on March 30, 2004.[72]

---

complaints were without merit. (*See*, *e.g.*, Dkt. No. 26, Part 37 [attaching Plaintiff's grievance dated 10/9/03, bearing handwritten note signed by Plaintiff, which stated, "10/17/03 returned mail & money. [W]ill appeal via disciplinary. Joseph C. Brown"].)

[71]    (Dkt. No. 26, Part 24 [attaching letter from Clinton C.F. Captain S. Brown to Plaintiff dated 4/8/04].)

[72]    (*Compare* Dkt. No. 26, Part 2, ¶¶ 26-29 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶ 18 [admitting the asserted facts]; *see also* Dkt. No. 26, Part 10 [attaching CORC decision dated 3/30/04].)

Finally, following Plaintiff's February 20, 2004, appeal to Defendant Artus's office from the denial (by the Clinton C.F. Inmate Grievance Review Committee) of Plaintiff's grievance dated February 10, 2004, Defendant Artus's office referred the appeal for review to First Deputy Superintendent, William D. Brown; First Deputy Superintendent Brown reviewed and upheld the disposition of the Inmate Grievance Review Committee on February 19, 2004, which disposition was later also reviewed and upheld by the Central Office Review Committee on March 17, 2004.[73]

Simply stated, no record evidence exists upon which a reasonable fact-finder could conclude that Defendant Artus "fail[ed] to act," as required for the fifth type of personal involvement. *Hernandez*, 341 F.3d at 145. If Plaintiff is arguing that Defendant Artus's actions were inadequate somehow, then Plaintiff has failed to specify the inadequacy, or support it with evidence.

As a result, I recommend that the Court dismiss Plaintiff's Complaint against Defendant Artus due to Defendant Artus's lack of personal involvement in any of the alleged constitutional violations.

---

[73]     (*Compare* Dkt. No. 26, Part 2, ¶¶ 32-37 [Defs.' Rule 7.1 Statement, asserting these facts, and citing evidence in support of them] *with* Dkt. No. 29, Plf.'s Rule 7.1 Response, ¶¶ 21-23 [admitting most of the asserted facts, and denying "sufficient knowledge to admit or deny" some of the facts, but failing to set forth a specific citation to the record where any factual issue arises, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, and thus effectively admitting that fact]; *see also* Dkt. No. 26, Part 14 [attaching decision by First Deputy Superintendent William D. Brown dated 2/19/04]; Dkt. No. 26, Part 16 [attaching decision by CORC dated 3/17/04].)

### 3.      Defendant Lynch

With respect to the various constitutional violations that Plaintiff alleges, Plaintiff has failed to either (1) allege facts indicating that Defendant Lynch was personally involved in any of those violations or (2) adduce any evidence upon which a reasonable fact-finder could base a conclusion that Defendant Lynch was personally involved in any of those violations.

As stated earlier, Plaintiff alleges that Defendants violated his rights under the First, Eighth and Fourteenth Amendments due to their involvement in (1) the allegedly improper searching of his mail on or about October 8, 2003, (2) the allegedly improper searching of his prison cell on or about October 8, 2003, (3) the allegedly improper testing of his urine for drug usage on or about October 9, 2003, and January 25, 2004, and (4) the allegedly improper conducting of three disciplinary hearings concerning Plaintiff, which occurred in October of 2003 and February of 2004.[74]

With respect to the allegedly improper searching of Plaintiff's mail on or about October 8, 2003, Plaintiff alleges that Defendant Lynch "confiscated and read" Plaintiff's mail.[75]  As an initial matter, this allegation is inconsistent with various other of Plaintiff's allegations, which acknowledge that it was someone *other than Defendant Lynch* who improperly opened and searched his mail.[76]  Moreover, it is highly questionable that this isolated incident of improperly

---

[74]      (Dkt. No. 1 & Attachments [Plf.'s Compl.].)

[75]      (Dkt. No. 1, "Statement of Claim," ¶ 1 [Plf.'s Compl.].)

[76]      (*See*, *e.g.*, Dkt. No. 1, "Statement of Claim,"  ¶ 1 [Plf.'s Compl., alleging that, after Plaintiff asked Defendant Lynch way his mail "was read," Defendant Lynch replied that "*someone in correspondence* thought it suspicious [that] two inmates [were] receiving money orders from the same person"; and alleging that Plaintiff had informed Defendant Lynch that "he *or the person in correspondence* had no authority to read or confiscate Plaintiff's incoming mail

opening Plaintiff's non-legal mail states a claim of a constitutional dimension.[77]  In any event,

even if I were to liberally construe Plaintiff's Complaint as alleging that it was Defendant Lynch

who had improperly opened and searched his mail in violation of the Constitution, Plaintiff has

adduced no evidence in support of that allegation.[78]  The closest Plaintiff comes to adducing such

evidence is when he declares under penalty or perjury that the allegations of his Complaint are

true and correct, thus converting his Complaint into an affidavit for purposes of a summary

judgment analysis.[79]  However, Plaintiff's sworn statement that Defendant Lynch "confiscated"

Plaintiff's mail is entirely conclusory and not based on personal knowledge; as a result, it does

---

without following [the] Directive that govern[ed] such [a reading and confiscation]."]; Dkt. No.
1, Attachments [Plf.'s Compl., attaching as an exhibit Plaintiff's grievance dated 10/9/03,
directed against Defendant Lynch and *the Head Clerk of Inmate Correspondence*, alleging that
"[h]ad Inmate Correspondence complied with the rules and regulations governing their job
function, and ahdere[d] to Chapter VIII, Directives 4422 and 4421, I would not be faced with
said harassment," and requesting as relief that the "person(s) who read my mail without
following proper procedures and obtaining proper authorization[] be reprimanded . . . ."]
[emphasis added].)

[77]     *See Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *12-13 (N.D.N.Y. Sept.
26, 2006) (Mordue, C.J.) ("[A]n isolated event of [mail] tampering will be insufficient to allege a
constitutional violation unless the inmate can show that prison officials regularly and
unjustifiably interfered with the incoming legal mail. . . .  With regard to non-legal incoming
mail, a prison's regulations or practices affecting a prisoner's receipt of non-legal mail must be
reasonably related to legitimate penological interests. . . .  Prison security is a sufficiently
important governmental interest to justify limitations on a prisoner's First Amendment rights. . . .
In order to state a claim for interference with incoming non-legal mail, the inmate will have to
show a pattern and practice of interference without the legitimate penological interest.") [internal
quotation marks and citations omitted]; *see also Morgan v. Montanye*, 516 F.2d 1367, 1370-1372
(2d Cir. 1975) (affirming dismissal of inmate's claim alleging isolated instance of prison
officials' improper opening of his privileged legal mail).

[78]     (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt.
No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[79]     (Dkt. No. 1 at 7 [Plf.'s Compl.].)

34

not constitute evidence sufficient to oppose Defendants' motion for summary judgment.[80]  Even

if Plaintiff's sworn statement were non-conclusory and based on personal knowledge, I find that

it would be insufficient evidence from which a fact-finder could conclude that Defendant Lynch

was personally involved in the alleged constitutional violation, given the weight of record

evidence to the contrary.[81]  Finally, even if Defendant Lynch were found to have been somehow

personally involved in the alleged constitutional violation, no evidence exists in the record from

which a reasonable fact-finder could conclude that any such constitutional violation occurred.[82]

Indeed, the alleged constitutional violation--which served as one of the bases for various of

Plaintiff's grievances and disciplinary conviction appeals--was investigated and found to be

without merit due to a lack of evidence of any wrongdoing.[83]

    With regard to the allegedly improper searching of Plaintiff's prison cell on or about

---

[80]     *See*, *supra*, Part III of this Report-Recommendation.

[81]     (*See*, *e.g.*, Dkt. No. 26, Part 26, at ¶¶ 5-6 [Lynch Affid., stating, "In accordance with the rules and regulations regarding general incoming correspondence, *the correspondence office* had inspected the plaintiff's general correspondence for cash, checks, money order . . . . The correspondence office in turn sent the materials to Captain Brown, who then sent them to me for investigation."] [emphasis added].)

[82]     (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt. No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[83]     (*See*, *e.g.*, Dkt. No. 26, Part 2, ¶¶ 15-17, 38, 41, 44 [Defs.' Rule 7.1 Statement, supporting its factual assertions with citations to record evidence]; Dkt. No. 26, Part 36 [attaching Plaintiff's disciplinary history, showing that Plaintiff's appeals from his two Tier II disciplinary convictions on 10/16/03 were affirmed by Captain S. Brown on 10/22/03]; Dkt. No. 26, Part 24 [attaching letter from Clinton C.F. Captain S. Brown to Plaintiff dated 4/8/04, stating that, after conducting an investigation into Plaintiff's allegations, "I find no wrongdoing on any staff member's part; they performed their duties in an exemplary manner."].)  *See also*, *supra*, note 77 of this Report-Recommendation [citing cases indicating that the violation alleged is not one of a constitutional dimension].

October 8, 2003, Plaintiff alleges that Defendant Lynch ordered that search (which was conducted by corrections officers other than Defendant Lynch).[84]  The problem with this allegation is that, in and of itself, the unwarranted search of an inmate's prison cell is not a constitutional violation because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell."[85]  Such an unwarranted search could become a constitutional violation under the circumstances alleged only if it was conducted in retaliation for Plaintiff's exercise of a First Amendment right.[86]  Here, however, Plaintiff does not allege any facts indicating that he had been engaging in "protected conduct" under the First Amendment before the cell search, or that Defendant Lynch knew of that fact and ordered the search *as a result* of that conduct.[87]

With respect to the allegedly improper testing of Plaintiff's urine for drug usage on or about October 9, 2003, Plaintiff alleges that Defendant Lynch ordered that test (which was

_____

[84]    (Dkt. No. 1, "Statement of Claim," ¶ 2 [Plf.'s Compl.].)  I note that Defendant Lynch admits this allegation.  (Dkt. No. 26, Part 26, ¶ 11 [Lynch Affid.].)

[85]    *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also Tinsley v. Greene*, 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31, 1997) (Pooler, J.) ("Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights."); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y.) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (Kaplan, J., sitting by designation), *aff'd*, 122 F.3d 1055 (2d Cir. 1995).

[86]    *See*, *e.g.*, *Dawkins v. Jones*, 2005 U.S. Dist. LEXIS 1197, at *8, 12 18-19, 46-47 (S.D.N.Y. Jan. 31, 2005) (considering inmate's claim of improper pat searches not as a Fourth Amendment claim but as a First Amendment claim, premised on the allegedly retaliatory nature of those pat searches).

[87]    (*See generally* Dkt. No. 1, "Statement of Claim," ¶¶ 1-2 [Plf.'s Compl.].)

36

conducted by a corrections officer other than Defendant Lynch).[88]  Plaintiff fails to allege, however, that the test was ordered without cause or for retaliatory reasons; rather, Plaintiff alleges that the "[g]round[] for [the] urine test was suspicion."[89]  Under New York State regulations, corrections personnel may order an inmate to submit to a urine test based on a reasonable suspicion and information from a source that the inmate is using, or has recently used, illicit drugs or alcohol.[90]  In any event, even if Plaintiff had stated a claim for some sort of constitutional violation, Plaintiff has failed to adduce any evidence that Defendant Lynch indeed ordered the test.[91]  In fact, the record evidence indicates that it was a Sergeant "P. Devlin" who ordered the test.[92]  Nor is there any evidence from which a reasonable fact-finder could conclude that the test violated the Constitution.[93]  To the contrary, the denial of Plaintiff's grievances and disciplinary hearing, which were based in part on the urine test, weigh in favor of a conclusion that the test did not violate the Constitution.[94]

---

[88]     (Dkt. No. 1, "Statement of Claim," ¶ 3 [Plf.'s Compl.].)

[89]     (*Id.*)

[90]     *Harris v. Keane*, 962 F. Supp. 397, 407 (S.D.N.Y. 1997) (citing 7 N.Y.C.R.R. § 1020.4[a][1]).

[91]     (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt. No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[92]     (Dkt. No. 26, Part 5 [Ex. B to Artus, Affid., attaching Request for Urinalysis Test dated 10/8/03, authored by Sgt. P. Devlin based on his suspicion of drug use through his acquisition of confidential information].)

[93]     (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt. No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[94]     (*See, e.g.*, Dkt. No. 26, Part 36 [attaching Plaintiff's disciplinary history, showing that Plaintiff's appeals from his two Tier II disciplinary convictions on 10/16/03 were affirmed by Captain S. Brown on 10/22/03]; Dkt. No. 26, Part 24 [attaching letter from Clinton C.F.

With respect to the allegedly improper conducting of two disciplinary hearings

concerning Plaintiff, which occurred on October 16, 2003, Plaintiff's sole allegation against

Defendant Lynch is that those hearings were the result of two unfounded misbehavior reports

authored by Defendant Lynch.[95]  As an initial matter, Plaintiff has adduced no evidence that

either of those two misbehavior reports were false.[96]  Indeed, the record evidence--which

establishes that the misbehavior reports led to disciplinary convictions that were affirmed on

appeal--is to the contrary.[97]  In any event, even if I were to assume that those two misbehavior

reports authored by Defendant Lynch were indeed false, Plaintiff has failed to allege that

Defendant Lynch was personally involved in a *constitutional violation*.  "It is well established

that in the absence of other aggravating factors, an inmate enjoys no constitutional right against

the issuance of a false misbehavior report."[98]  Here, Plaintiff's Complaint does not contain an

---

Captain S. Brown to Plaintiff dated 4/8/04, stating that, after conducting an investigation into
Plaintiff's allegations, "I find no wrongdoing on any staff member's part; they performed their
duties in an exemplary manner."].)

[95]      (Dkt. No. 1, "Statement of Claim," ¶¶ 4-6 [Plf.'s Compl., alleging that both of his
October 2003 misbehavior reports were "written and signed by Sergeant Lynch," and alleging no
other role in, or misconduct by, Defendant Lynch in the two disciplinary hearings that were held
on October 16, 2003, pursuant to the issuance of the two misbehavior reports].)

[96]      (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt.
No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[97]      (*See, e.g.*, Dkt. No. 26, Part 36 [attaching Plaintiff's disciplinary history, showing
that Plaintiff's appeals from his two Tier II disciplinary convictions on 10/16/03 were affirmed
by Captain S. Brown on 10/22/03]; Dkt. No. 26, Part 24 [attaching letter from Clinton C.F.
Captain S. Brown to Plaintiff dated 4/8/04, stating that, after conducting an investigation into
Plaintiff's allegations, "I find no wrongdoing on any staff member's part; they performed their
duties in an exemplary manner."].)

[98]      *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *13 (N.D.N.Y. Dec. 22,
2005) (Sharpe, J., adopting report-recommendation by Peebles, M.J.); *see also Freeman v.*

allegation of any such aggravating factors (such as an allegation that the allegedly false

misbehavior reports were issued in retaliation for Plaintiff's exercise of a constitutionally

protected right).[99]

      With respect to the allegedly improper testing of Plaintiff's urine for drug usage on or

about January 25, 2004, Plaintiff does not allege that Defendant Lynch was personally involved

in that test (such as by ordering it or conducting it).  The closest Plaintiff comes to making such

an allegation is when he alleges, "While Plaintiff awaited his hearing in punitive segregation at

Clinton Annex, Sergeant Lynch[] came to Plaintiff's cell and stated[,] 'You know[,] Brown,

some guys know how to quit while they're ahead.  What's your problem?"[100]  Taken in context

with the rest of Plaintiff's allegations, the significance of this allegation is its implication that

Plaintiff was subjected to a urine test on January 25, 2004, because of a complaint that Plaintiff

had previously filed with Defendant Goord's Office regarding the events of October 2003.[101]

However, the problem with this allegation is that Defendant Lynch's mere knowledge of

Plaintiff's complaint to Defendant Goord's Office does not in any way involve him in the testing

of Plaintiff's urine (especially considering the fact that Plaintiff acknowledges that the urine test

---

*Rideout*, 808 F.2d 949, 951-953 (2d Cir. 1986); *Hodges v. Jones*, 873 F. Supp. 737, 743-744
(N.D.N.Y. 1995) (Chin, J., sitting by designation).  "The rationale supporting this general rule is
that an inmate's procedural due process rights are adequately safeguarded by the opportunity to
challenge and present evidence to rebut the false accusations at a disciplinary hearing."  *Ciaprazi*,
2005 WL 3531464, at *13 [citing *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986)].

    [99]      (Dkt. No. 1, "Statement of Claim," ¶¶ 1-6 [Plf.'s Compl.].)

    [100]     (Dkt. No. 1, "Statement of Claim," ¶ 8 [Plf.'s Compl.].)

    [101]     (Dkt. No. 1, "Statement of Claim," ¶¶ 5-8 [Plf.'s Compl.].)

was requested, not by Defendant Lynch, but by a "Sergeant West").[102]  Plaintiff does not even

bother to allege the existence of some sort of conspiracy between Defendant Lynch and Sergeant

West.[103]  In any event, even if I were to liberally construe Plaintiff's Complaint as alleging that

Defendant Lynch was somehow involved in the testing of Plaintiff's urine on January 25, 2004, I

find that Plaintiff has failed to adduce sufficient evidence from which a reasonable fact-finder

could conclude that (1) any constitutional violation occurred with regard to the testing of

Plaintiff's urine, or (2) Defendant Lynch was personally involved in such a constitutional

violation.[104]  Rather, the available record evidence--which establishes that Plaintiff's subsequent

grievances and disciplinary conviction appeals based on this alleged violation were denied--is to

the contrary.[105]

        Finally, with respect to the allegedly improper conducting of Plaintiff's disciplinary

hearing on February 5, 2004, Plaintiff has failed to allege any facts indicating that Defendant

Lynch played any role whatsoever in the conducting of that hearing or the issuance of the

misbehavior report on which the hearing was held.[106]  In any event, even if I were to liberally

_____

[102]    (Dkt. No. 1, "Statement of Claim," ¶ 7 [Plf.'s Compl.].)

[103]    (*See generally* Dkt. No. 1, "Statement of Claim," ¶¶ 7-12 [Plf.'s Compl.].)

[104]    (*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt.
No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[105]    (Dkt. No. 26, Part 2, ¶¶ 21-32, 35-37 [Defs.' Rule 7.1 Statement, supporting its
factual assertions with citations to record evidence].)

[106]    (Dkt. No. 1, "Statement of Claim," ¶¶ 7-12 [Plf.'s Compl., not alleging that it was
Defendant Lynch who ordered his January, 25, 2004 urine test, which was ordered by a "Sergeant
West," or that it was Defendant Lynch who either authored Plaintiff's January 26-27, 2004,
misbehavior report or conducted Plaintiff's February disciplinary hearing].)

construe Plaintiff's Complaint as alleging that Defendant Lynch was somehow involved in

Plaintiff's February 5, 2004, disciplinary hearing or the issuance of the underlying misbehavior

report, I find that Plaintiff has adduced insufficient evidence from which a reasonable fact-finder

could conclude that (1) there was any constitutional violation occurring with regard to Plaintiff's

February 5, 2004, disciplinary hearing (or the issuance of the underlying misbehavior report), or

(2) Defendant Lynch was personally involved in that constitutional violation.[107]  Rather, the

available record evidence--which establishes that Plaintiff's subsequent grievances and

disciplinary conviction appeals based on this alleged violation were denied--is to the contrary.[108]

　　　　For these reasons, I recommend that the Court dismiss all of Plaintiff's claims against

Defendants Goord, Artus and Lynch based on Plaintiff's failure to allege facts indicating, and/or

his failure to adduce evidence showing, that they were personally involved in the alleged

constitutional violations.

## B.　Whether, in the Alternative, Plaintiff Has Failed to State a Due Process Claim Under the Fourteenth Amendment Concerning the Conducting of His Three Disciplinary Hearings

　　　　Because I have already concluded that adequate reason exists to dismiss Plaintiff's

Complaint, I need not, and do not, reach the merits of Defendants' alternative argument that

Plaintiff's Complaint should be dismissed due to the fact that Plaintiff has failed to state a due

process claim under the Fourteenth Amendment concerning the conducting of his three

---

[107]　　　(*See generally* Dkt. No. 1 [Plf.'s Verified Compl. and Attached Exhibits]; Dkt. No. 29 [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

[108]　　　(Dkt. No. 26, Part 2, ¶¶ 21-32, 35-37 [Defs.' Rule 7.1 Statement, supporting its factual assertions with citations to record evidence].)

disciplinary hearings.[109]

> ### C.   Whether, in the Alternative, Defendants Are Protected from Liability by the Doctrine of Qualified Immunity

Again, because I have already concluded that adequate reason exists to dismiss Plaintiff's Complaint, I need not, and do not, reach the merits of Defendants' alternative argument that Plaintiff's Complaint should be dismissed due to the fact that Defendants are protected by qualified immunity as a matter of law.[110]

> ### D.   Whether, in the Alternative, the Eleventh Amendment Bars Recovery from Defendants in Their Official Capacity

Finally, again, because I have already concluded that adequate reason exists to dismiss Plaintiff's Complaint, I need not, and do not, reach the merits of Defendants' alternative argument that Plaintiff's Complaint should be dismissed due to the fact that the Eleventh Amendment bars recovery from Defendants in their official capacity.[111]

---

[109]   (Dkt. No. 26, Part 43, at 10-12 [Defs.' Mem. of Law].)

[110]   (Dkt. No. 26, Part 43, at 13-17 [Defs.' Mem. of Law].)

[111]   (Dkt. No. 26, Part 43, at 18-19 [Defs.' Mem. of Law].)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 26) be

**<u>GRANTED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 20, 2006
       Syracuse, New York

George H. Lowe
United States Magistrate Judge